IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL R. SOUTH,                    :

    Petitioner,                    :
                            CIVIL ACTION 11-0183-CG-M
v.                                   :
                       CRIMINAL ACTION 08-00031-CG-M
UNITED STATES OF AMERICA,            :

    Respondent.                    :

<u>REPORT AND RECOMMENDATION</u>

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 89). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases. It is now ready for consideration. The record is adequate to dispose of this matter; no evidentiary hearing is required. It is recommended that Petitioner's Motion to Vacate (Doc. 89) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Michael R. South. It is further recommended that, should Petitioner file a certificate of appealability, it be denied as he is not entitled to appeal *in forma pauperis*.

1

South was indicted on January 31, 2008 for traveling across state lines to commit an illegal sex act in violation of 18 U.S.C. § 2423(b) and committing a felony with a minor in violation of 18 U.S.C. § 2422(b) (Doc. 4).  On April 25, 2008, a superceding indictment charged Petitioner with the following: (1) traveling in interstate commerce for the purpose of engaging in and attempting to engage in a sexual act with a person under twelve years old in violation of 18 U.S.C. § 2241(c); (2) traveling in interstate commerce for the purpose of engaging in and attempting to engage in illicit sexual conduct with a person under eighteen years old in violation of 18 U.S.C. § 2423(b); and (3) having been required to register as a sex offender, committing a felony involving a minor in violation of 18 U.S.C. § 2260(A) (Doc. 32).  In Petitioner's trial, South was found guilty of the first two counts of the superceding indictment (*see* Doc. 57).[1]  United States District Judge Granade sentenced Petitioner to life imprisonment as to Count One, sixty years as to Count Two, to run concurrently with the sentence in Count One, and 120 months on Count Three, to be served consecutive to

---

[1]The Parties stipulated, before the jury entered its verdict, that "if the defendant was convicted by the jury on Counts One or Two, the sentencing enhancement alleged in Count Three would apply" (Doc. 61, p. 1, ¶ 7).

the sentences in Counts One and Two;[2] additionally, South was sentenced to supervised release following his release from prison for life on all three Counts, and an assessment of three hundred dollars (Doc. 69).

South appealed his conviction (Doc. 70).  The Eleventh Circuit Court of Appeals affirmed the conviction and sentence in Count One, vacated the convictions and sentences in Counts Two and Three, and remanded the action back to this Court for resentencing (Doc. 84).  At resentencing, Judge Granade sentenced Petitioner to life imprisonment as to Count One, supervised release for life, and an assessment of one hundred dollars (Doc. 88).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on April 11, 2011 in which he raised the following claims:  (1) His attorney rendered ineffective assistance; (2) the prosecution tampered with some of the evidence; and (3) the Court did not have jurisdiction to convict or sentence him (Doc. 89).  Respondent filed a response (Doc. 92) to which Petitioner replied (Doc. 94).

South first raises an ineffective assistance of counsel claim.  He more particularly asserts that his attorney failed to do the following:  (a) Present a misdemeanor statute that

---

[2]These Counts are from the Superceding Indictment (Doc. 69).

precisely described Defendant's actions/intent; (b) present discovery evidence of the initial misdemeanor indecent exposure incident report and the responding officer's testimony regarding that offense; (c) call an expert witness to testify; (d) rebut misleading and incorrect statements and object to how he was interviewed by Detective McClenic; (e) insure that the jury instructions included a pertinent statute that precisely described his intent and actions; (f) present encrypted DVD evidence after reviewing them in the courtroom; and (g) cross-examine witness Robert Mitchum Adcock (Doc. 89).

The Court notes that, in *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

South first asserts that his attorney rendered ineffective assistance in that he failed to present a misdemeanor statute that precisely described Defendant's actions/intent; Petitioner argues that he was guilty only of indecent exposure, directing the Court's attention to the Mississippi and Alabama statutes for indecent exposure (Doc. 89, p. 8).[3]  South's argument, at its core, is that he did not have the intent to commit the federal statute of which he was convicted.

The Court agrees with the Government's characterization of this claim as one of insufficiency of the evidence (*see* Doc. 92, pp. 18-22).  The Eleventh Circuit Court of Appeals addressed Petitioner's assertion that his conviction was not supported by the evidence, specifically finding that "[a] rational juror could have found that South had the requisite intent beyond a

---

[3]"A person commits the crime of indecent exposure if, with intent to arouse or gratify sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm in any public place or on the private premises of another or so near thereto as to be seen from such private premises."  Ala. Code § 13A-6-68(a).
"A person who willfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, is guilty of a misdemeanor and, on conviction, shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or be imprisoned not exceeding six (6) months, or both.  It is not a violation of this statute for a woman to breast-feed."  Miss. Code § 97-29-31.

reasonable doubt" (Doc. 84, p. 11).  The Court notes that "[u]nder the 'law of the case' doctrine, the 'findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the trial court or on a later appeal.'" *Heathcoat v. Potts,* 905 F.2d 367, 370 (11th Cir. 1990) (*quoting Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984)).[4]  *Heathcoat* would seem to preclude this Court's further consideration of this issue.

Nevertheless, the Court notes that South's Attorney, Peter Madden, in his opening argument, stated as follows:

> The government's case is based on the worst nightmares of every parent and not on reality.  Not on what happened.  Not on what Michael did.  What he did was a crime of public indecency, public ludeness [sic], indecent exposure.  He did not touch any child, he did not attempt to touch any child.  He did not attempt to have sex with any child and he never intended to have sex with any child.  There's no evidence of it.

(Doc. 81, p. 39).  His Attorney, later in the argument, reiterated that "[t]here was no attempt to have sex.  There was

---

[4] "[T]he law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."  *Heathcoat*, 905 F.2d at 371 (*quoting Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir. 1984).

no intent to have sex" (*id.* at p. 42).   In his closing

statements, Madden argued the following:

> And what he's charged with here isn't
> with being a weirdo.  He's not charged with
> being a pervert.  This was a specific
> federal crime.  It's a crime.  You know,
> public ludeness [sic] is a crime.  And it's
> a crime in Mississippi, it's a crime in
> Alabama.  But what brings us here, what
> makes this a federal case in a big courtroom
> in federal court, is interstate travel with
> intent to engage in illicit sexual conduct
> with a minor.
>
> ***
>
> When Michael had the opportunity to
> grab those kids, to do something, to
> actually make some physical contact, what
> did he do? He ran away.  He did what he
> intended to do.

(Doc. 81, p. 229).  Later in his argument, the Attorney stated

"What else did we have?  The license plate off the car.  It's

illegal.  Public lewdness [sic] is illegal.  The fact the plate

was off the car, he didn't want to be detected.  That doesn't

mean he was going to have sex with a child.  There's no

connection there" (*id.* at p. 232).  And finally, he argued

"[a]nd when you look at the facts, you know what Michael was

doing.  He masturbated and ran away.  He's not guilty of what

he's charged with in this case" (*id.* at p. 233).

The Court finds that Petitioner's claim that his attorney rendered ineffective assistance in not presenting a misdemeanor statute that precisely described Defendant's actions/intent for the jury's consideration is without merit.

South next claims that his attorney rendered ineffective assistance in that he did not present discovery evidence of the initial misdemeanor indecent exposure incident report and the responding officer's testimony regarding that offense (Doc. 89, p. 9). Petitioner argues that the incident report "notes the distinct lack of any enticement, lack of any attempted sexual contact, lack of any intended sexual contact, and lack of any sexual language, or any designed meeting with a minor by the Defendant" (*id.*).

South has included a copy of the incident report, along with his petition, which has the following written statement by the arresting officer:

> Victim states he was in his backyard attempting to get his dog which had gotten out when he was approached by a nude male. Victim states the male asked him how old he was. Suspect than asked the victim, "Do you ever go streaking through the woods?" The Victim ran to his house at the time. Victim advised that suspect was walking on a trail that runs behind all the houses on Park Ridge Drive. Victim's mother also states she saw the Suspect on the trial but he was wearing black shorts. Suspect described as

> a white male, medium build, dark hair,
> carrying clothes in one hand and scratching
> himself with the other.

(Doc. 89, p. 29). The Court finds at the outset that the incident report did not, as Petitioner has asserted, "note[] the distinct lack of any enticement, lack of any attempted sexual contact, lack of any intended sexual contact, and lack of any sexual language, or any designed meeting with a minor by the Defendant" (Doc. 89, p. 9).

The Court has reviewed the trial transcript which shows that the Victim's mother testified that she lives in Hurley, Mississippi with her husband and child (Doc. 81, Tr. 42-61). Behind the house and neighborhood is a park with ball fields and a dirt trail. On the afternoon of Sunday, November 4, 2007, the Witness's mother's dog had gotten out of its fenced-in-area and was in the brush behind the house; the Mother had her son, who is also the Victim in this action and a child from a previous marriage who was visiting for the weekend, go get the dog. The Witness was staring out a window at the back of the house and watching her son trying to get the dog when she saw a man walking on the trail, at a fast pace, wearing only black running shorts. About ten minutes later, the son came in and said that he needed help getting the dog; he also said that he had seen a

9

naked man on the trail.  At first, the Mother did not think much
of it, but her son told her that the man had asked him how old
he was and if he wanted to go streaking through the woods.  The
Mother took her son to the sheriff's department and filed a
report; the next day, an officer came out and interviewed her
and took some photos of the area.  The Witness identified South
as the man in the running shorts behind her house that day.

The Victim also testified that he was nine years old when
he visited his Mother on November 4 and that he had gone out to
catch his grandmother's dog that had gotten loose (Doc. 81, Tr.
184-201).  While he was behind the house, he saw a naked man who
came over to within three yards of him and asked him how old he
was; the man also asked if he wanted to go streaking through the
woods with him.  The man had his hand on his penis, scratching
it while he was talking to him.  The Witness was nervous and
scared and ran back to the house and told his mother who took
him to the Sheriff's Department.  On another occasion, closer to
Christmas, the Boy was in the park with a fourteen-year-old
friend when they saw the man again on a trail closer to the ball
fields.  Later that same day, the two of them saw the man again,
nude this time, walking slowly; the man was holding his clothes,
scratching his privates.  The two boys called the friend's
grandfather, the Sheriff.  The nude man ran to his car, trying

to dress on the way, got in his car and started driving off, but he was stopped by the friend's grandfather.  The Witness identified South as the naked man.

The Court finds no error in Petitioner's attorney not introducing the incident report into testimony, noting that the information therein was testified to at trial.  The Court also notes that the Attorney questioned the Victim who testified that the naked man never tried to touch him or grab him (Doc. 81, Tr. 198-99).  South has not demonstrated that his attorney was deficient with regard to this claim.

Petitioner next claims that his attorney rendered ineffective assistance in failing to call an expert witness to testify that it was "reasonable and quite possible that the Defendant's intent was to only commit and limit himself to the act of Indecent Exposure without any intent of sexual contact or harm to anyone" (Doc. 89, p. 10).  South asserts that he and his attorney had discussed having a Massachusetts psychologist give this testimony.

The Court notes that Federal Rule of Evidence Rule 704(b) states the following:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the

> defendant did or did not have the mental
> state or condition constituting an element
> of the crime charged or of a defense
> thereto.  Such ultimate issues are matters
> for the trier of fact alone.

Fed.R.Evid. 704(b).  The Court further notes that Plaintiff's
Attorney, by way of affidavit, has stated that he "never had Mr.
South evaluated by a psychologist or psychiatrist because
opinion evidence of Mr. South's intent would not be admissible
at trial under any theory" (Doc. 92, Madden Aff., p. 2, ¶ 10c).
The Court finds that the Attorney cannot be considered deficient
for not presenting an expert witness as he would not have been
allowed to present the particular testimony which South sought.

Petitioner next claims that his attorney rendered
ineffective assistance in that he did not rebut misleading and
incorrect statements and object to how he was interviewed by
Detective McClenic (Doc. 89, pp. 11-13).  South complains that
he was unable to read the statement taken by the Detective
because he had left his eyeglasses in his car and that the
things he said were not written in the context in which he
stated them.

Ken McClenic testified that he was a Lieutenant and a
criminal investigator with the Jackson County Sheriff's
Department in Pascagoula, Mississippi and that he had been

involved with law enforcement for twenty-five years (Doc. 81,
pp. 91-112).  He stated that he was aware of an incident report
involving a specified woman's son which occurred on November 4,
2007 and that he was called out to a family park near Hurley,
Mississippi on December 15 where he met the Sheriff, several
patrol officers, and the Defendant who was sitting in a maroon
Honda Accord with no license plates; the Investigator found the
car tag in the front passenger seat area.  When South was patted
down, McClenic found a film canister with petroleum jelly in it
and a pair of fake glasses with bushy eyebrows and a nose.  In
the car was a bag with several masks, a rainbow wig, and a
homemade ghillie suit in it; the Investigator also found another
film canister with petroleum jelly in it as well as a thirteen-
ounce jar of petroleum jelly in the car.  McClenic advised South
of his Miranda rights and then talked with him about the
November 4 incident; South admitted that he had been the man in
the boy's backyard and that he had asked the boy how old he was
and said something about streaking.  The Investigator stated
that South told him that he liked to share his sexual knowledge
with younger boys.

On cross-examination, Petitioner's Attorney got McClenic to
admit that he was not a specialist in sex crimes and that
petroleum jelly was commonly used as a lubricant for

13

masturbating males; he stated that there did not appear to be any lubricant on South's hands or penis.  The Attorney also called McClenic as a witness for the Defense where the Investigator stated that he had interviewed the Victim on December 26 about the November 4 incident and that he had written in his report:  "He said something about streaking in the woods.  I really don't know exactly what he said" (Doc. 81, Tr. 208; *see generally* Tr. 207-10).  In his affidavit before this Court, the Attorney stated the following:  "As far as the cross-examination of Detective McClenic goes, I did the best I could with the facts I had.  Mr. South had a number of quibbles with McClenic's version of South's statements, but I tried to minimize the damaging statements attributed to South by McClenic and to emphasize that South maintained his innocence in the interrogation" (Doc. 92, Madden Aff., p. 2, ¶ 10d).

The Court finds no merit in Petitioner's claim that his Attorney rendered ineffective assistance in his questioning of McClenic.  South has not demonstrated that the Investigator lied about what he had been told in his interview; the Court also notes that Petitioner admits that he signed the statement taken by McClenic.  South has not demonstrated how he has been prejudiced.

Petitioner next asserts that his attorney was ineffective in failing to insure that the jury instructions included a pertinent statute that precisely described his intent and actions (Doc. 89, pp. 14-15).  South has asserted that the jury should have been made knowledgeable of the Mississippi statute concerning indecent exposure.

The Court finds that this claim is another challenge to the sufficiency of the evidence, decided against South by the Eleventh Circuit Court of Appeals.  It gains no greater strength as a challenge to the jury instructions.  This claim is without merit.

Petitioner has also claimed that his attorney was ineffective in failing to present encrypted DVD evidence after reviewing the DVD's in the courtroom (Doc. 89, pp. 18-20). South asserts that this "collection of videos shows the recent and consistent past intent of the Defendant's fondness of being nude outdoors with absolutely no intent of sexual contact with anyone" (*id*. at p. 18).

The Court notes that Plaintiff's Attorney, in his affidavit, stated the following:

> During the discovery phase of the case, the Federal Defenders' Computer Systems Administrator, Chris Feaster, obtained a copy of password protected digital data on

> hard drive from the government's expert.
> The government had been unable to view the
> contents of the hard drive because of the
> password protection.  As we broke for lunch
> on the final day of trial, South told me and
> Chris Feaster the password.  Mr. Feaster was
> able to open the files on the hard drive and
> to review some of the files during the lunch
> break.  We were concerned that it could
> contain images of child pornography, but it
> did not.  What I recall seeing was a home-
> made video of Mr. South masturbating in a
> room with no one else present.  The contents
> were not exculpatory and not helpful to Mr.
> South's case.  Further, while there may have
> been videos of Mr. South nude in an outdoor
> setting on other occasions, such videos
> would not have been admissible to prove Mr.
> South's intent on the dates charged in the
> indictment.

(Doc. 92, Madden Aff., pp. 2-3, ¶ 10g).  The Court cannot say

that the Attorney's choice not to show this DVD evidence was not

"'sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (*quoting*

*Michel v. Louisiana*, 350 U.S. 91, 101 (1955) ("Because of the

difficulties inherent in making the evaluation, a court must

indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is,

the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound

trial strategy'").  The Court finds that South has failed to

demonstrate that he was prejudiced in this matter.

16

Petitioner next claims that his attorney was ineffective in that he did not cross-examine witness Robert Mitchum Adcock (Doc. 89, pp. 21-22).  Adcock was a victim of South's from 1989 which led to Petitioner's conviction of sodomy.  South's argument is that Adcock's testimony at this trial varied from testimony at the previous trial.  Specifically, Adcock testified more recently that Petitioner had fondled him and that sodomy had actually been consummated while prior testimony was that there was no fondling and that there had been an attempt at sodomy, but that it did not actually occur (*id.*).

The Court has reviewed Adcock's testimony (Doc. 81, Tr. 176-84) and notes that South's Attorney tried to exclude the testimony but Judge Granade allowed it (*id.* at Tr. 178-79).  In making his argument to the Court, Madden pointed out that evidence of the first-degree sodomy conviction had already been admitted into evidence (*id.* at Tr. 178; *see also* Tr. 175).  Plaintiff's Attorney, in his affidavit, stated that he

> made a strategic decision during trial not
> to cross-examine the victim of a sex offense
> for which Mr. South was convicted and served
> a term of 15 years imprisonment. . . . The
> witness was a child when the offense
> occurred and he was very emotional when
> testifying.  I could seen no benefit in
> challenging inconsistencies between his
> testimony and hearsay statements attributed

17

> to him in police reports, especially where
> Mr. South had pled guilty to the offense.

(Doc. 92, Madden Aff., p. 3, ¶ 10h).

The Court finds that the Attorney's decision was reasonable to not cross-examine the witness.  Again, this Court cannot say that this was not sound trial strategy.  Petitioner has failed to demonstrate that he has been prejudiced because of this decision.

In summary, South has raised seven different particular claims of ineffective assistance.  The Court finds that Petitioner has failed to demonstrate that his attorney was deficient and that he was prejudiced by that deficiency, as required in *Strickland*, on any of the assertions.  His claim otherwise is without merit.

South has also raised the claim that the prosecution tampered with some of the evidence (Doc. 89, pp. 16-17).  More specifically, Petitioner states that, at the time of arrest, there were some gray t-shirts that had been crafted into a Halloween-type costume with gray gauze sewn onto the surface; he asserts that calling it a ghillie suit and only showing it to the jury in the rebuttal closing argument, with the gray gauze unexposed, prejudiced him because it associated him with military snipers.

18

The Government has asserted that this claim is procedurally defaulted since it was not raised on appeal (Doc. 92, pp. 30-31).  South admits that he has not raised the claim previously (Doc. 89, p. 17).  To overcome the default, it would be necessary for Petitioner to show both (1) "cause" for not timely raising the claim and (2) "actual prejudice" resulting from the error.  *United States v. Frady*, 456 U.S. 152, 166 (1982).

The Court finds that Petitioner has not asserted—much less demonstrated—cause for his failure to raise this claim in a timely manner.  Likewise, he has not demonstrated that he has been prejudiced.  As South has not met the requirements of *Frady*, this claim is procedurally defaulted and the Court will not address its merit.

South's final claim is that the Court did not have jurisdiction to convict or sentence him (Doc. 89, pp. 23-26).  Petitioner argues, once again, that, if anything, he should have been charged under the indecent exposure laws of Mississippi.  The Court finds that this claim gains no ground under South's characterization of it as a jurisdictional claim.  It is of no merit.

Petitioner has raised three different claims in bringing this action.  One claim is procedurally defaulted and the Court did not get to the substantive merits of it; the other two

claims are without merit.  Therefore, it is recommended that this petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Michael R. South.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a COA.  28 U.S.C. § 2253(c)(1). A COA may issue only where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the merits of a claim are reached, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Where a habeas petition is being denied on procedural grounds, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this action, South has raised one claim that is procedurally defaulted; Petitioner admits that he did not raise the claim in any legal setting before bringing it in this action. Therefore, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that South should be allowed to proceed further. *Slack* 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further").

The Court further notes that Petitioner raised two claims which the Court found are without merit. As the Court has found that South has failed to assert sufficient facts to support a claim of constitutional error, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. It is suggested that South will not be able to make that showing.

21

## CONCLUSION

It is recommended that Petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2255, be denied. It is further recommended that, should Petitioner file a certificate of appealability, it be denied as he is not entitled to appeal *in forma pauperis*.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition

made.  It is insufficient to submit only a copy of the
original brief submitted to the magistrate judge,
although a copy of the original brief may be submitted
or referred to and incorporated into the brief in
support of the objection.  Failure to submit a brief
in support of the objection may be deemed an
abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

DONE this 8th day of February, 2012.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE